**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DAWN AIELLO,** Plaintiff<br>vs.<br>**UTICA INSURANCE COMPANY,** Defendant | * | **CIVIL ACTION NO. 11-12235-DJC** |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b) (6)

The Defendant, "Utica Insurance Company", misnamed for Graphic Arts Mutual Insurance Company ("Utica"), hereby respectfully requests that this Court grant its motion to dismiss the Plaintiff's Complaint in accordance with Fed. R. Civ. P. 12 (b) (6). In support of this motion, the Defendant states that the following.

I. PLAINTIFF'S ALLEGATIONS

The Plaintiff, Dawn Aiello, claims that she was injured at the Shaw's Supermarket in Gloucester, Massachusetts, on May 1, 2007. (See Plaintiff's Complaint and Jury Trial Demand, attached to Utica's motion as Exhibit A, para. 4.) At or after mediation, Ms. Aiello agreed to settle her claims in exchange for a payment of $75,000 from Shaw's Supermarket and $85,000 from Cape Ann Marketplace, LLC, and its insurer, Utica. (Ex. A, para. 5.) As part of the settlement, counsel for the defendant allegedly requested the signing of a release

and a conditional payment letter concerning any lien rights which Medicare may have in the circumstances. (Ex. A, para. 8.)

Ms. Aiello's counsel received the release on January 11, 2011, and she signed it that day. (Ex. A, para. 9.) On January 31, 2011, Plaintiff's counsel provided Utica with a W-9 tax form. (Ex. A, para. 11.) However, it was not until July 5, 2011, that Plaintiff's counsel sent a correspondence with a letter from Medicare concerning its lien. (Ex. A, para. 12.) According to that letter, Medicare had a lien in the amount of $1,783.26. (Ex. A, para. 12.)

In late August 2011, Plaintiff's counsel sent a second correspondence with documentation regarding Medicare's lien, which was then claimed to be $1,118.76. (Ex. A, para. 14.) Both Medicare lien letters refer to a date of loss of December 1, 2009, and the Payment Summary Form identifies no medical treatment prior to that date. (See the Plaintiff Attorney's correspondences dated July 5, 2011 and August 29, 2011, as well as the attached Medicare lien letters and/or Payment Summary Form, attached hereto as Exhibits B and C, respectively.) [1]

The Plaintiff has now asserted claims against the Defendant for alleged violations of Mass. Gen. L. c. 93A. (Ex. A.) As an individual consumer seeking

---

[1] For the purposes of a motion to dismiss, the Court may consider the documents cited in this Memorandum and attached to the Defendant's motion, since they are central to the Plaintiff's claim and/or sufficiently referenced in the Complaint. Restucci v. Clarke, 669 F.Supp.2d 150, 154 -155 (D.Mass.,2009), citing Parker v. Hurley, 514 F.3d 87, 90, n. 1 (1st Cir. 2008) ; see also Hodas v. Sherburne, Powers & Needham, P.C., 114 F.3d 1169, 1997 WL 211223 (1st Cir. 1997) (Unpublished), and cases cited.

to recover under that statute, Ms. Aiello is required to plead and prove that she served the Defendant with a proper and sufficient demand letter. Mass. Gen. L. c. 93A, § 9(3).

In her Complaint, the Plaintiff alleges that she sent such a letter to the Defendant in September, seeking payment of all funds owed or a reasonable explanation as to why such payments have not been made. (Ex. A, para. 18.) (The "demand letter" sent by Plaintiff's counsel is attached to Defendant's motion as Exhibit D.) A defendant is afforded the opportunity to serve a reasonable response to any demand letter sent under c. 93A, § 9(3). (The Defendant's response, providing the explanation referenced in paragraph 18 of the Complaint is attached to its motion as Exhibit E.)

On October 20, 2011, Utica issued a settlement check, in the amount of $85,000, made payable to "Dawn Aiello, Orlando & Associates and Medicare". (Ex. A, 16.) The Plaintiff contends that the Defendant was aware that this check was "non-negotiable." (Ex. A, paras. 16, 19.)

As detailed below and in its response to the c. 93A "demand letter", Utica's conduct was required by Federal law. Therefore, it did not violate and cannot be found to have violated c. 93A in these circumstances. Accordingly, the Defendant respectfully requests that this Court dismiss the Plaintiff's Complaint.

**ARGUMENT**

**I. THE STANDARD FOR A MOTION TO DISMISS.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (1st Cir.2008) (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

Under this standard, "[w]hile a complaint attacked by a motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculation level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1964-1965. Finally, "[w]hat is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief, in order to reflect the threshold requirement of [Rule] 8(a)(2) that the 'plain statement' possess enough heft to "show that the pleader is entitled to relief." Id at 1966.

In the present case, the Plaintiff cannot establish an entitlement to relief, and thus her claims must be dismissed.

## II. DEFENDANT'S CONDUCT WAS MANDATED BY FEDERAL LAW

Under Massachusetts law, "[t]he fact that conduct is lawful under statutes other than c. 93A is not an absolute bar to suit regarding the conduct." 52

Gilleran, Massachusetts Practice (Law of Chapter 93A), § 10.5. However, the fact that the conduct is permitted by statute or common law should be considered. Id, citing Schubach v. Household Finance Corp., 375 Mass. 133, 137 (1978); see also Kattar v. Demoulas, 433 Mass. 1, 7, 13, 14 (2000).

Thus, conduct which is lawful, in accordance with a statute, not undertaken maliciously, and apparently justified, will not violate c. 93A. Id, citing Fourth Street Pub, Inc. v. National Union Fire Ins. Co., 28 Mass.App.Ct. 157, 164 (1999). More specifically, the exercise of a right (or fulfillment of an obligation) under Federal law should not be conduct potentially violative of c. 93A. Sun Ins. Co. of New York v. Boston Beef Co, Inc., 115 F.R.D. 75, 76 (D.Mass. 1987). "Any claim that Chapter 93A, a state law, prohibits as an unfair practice the bringing of a suit in Federal rather than state court would be void on the ground that a state is without power to penalize the exercise of a right provided by the Constitution and statutes of the United States." Id.

In the present case, it is undisputed that Medicare had a lien against the Plaintiff's settlement. The issue was not whether there was a lien, but rather its amount. This issue remains in doubt to this day. The only documentation provided to the Defendant concerned a date of loss of December 1, 2009, and treatments rendered to the Plaintiff after that date. (Ex. B and C.) However, the date of Ms. Aiello's fall which is the subject of this litigation occurred on May 1, 2007. (Ex. A, para. 4.)

Thus, the Medicare lien letter concerned a date of loss and resulting treatments at least two and one-half years after the fall in question. In addition, assuming that the Plaintiff suffered injuries or damages in the December 1, 2009 incident referenced in Medicare's documentation different from those arising from her May 1, 2007 fall, the lien asserted could not be correct as it would concern treatments unrelated to the settlement at issue. As detailed below, Medicare's lien against this settlement must be based on treatments related to the accident for which the Defendant and its insured are legally liable. If the Plaintiff underwent treatments for an entirely unrelated event, neither the Defendant nor its insured would be legally liable to pay for those damages, to either Ms. Aiello or Medicare asserting rights obtained through her.

Thus, either the lien asserted by Medicare was unrelated to this matter, or there was the distinct possibility that treatments prior to the December 2009 date of loss to which Medicare referred would trigger a different lien amount based on different treatments rendered. At the very least, Utica had a good faith basis to question the accuracy of the lien documentation and request a correction or clarification of the claimed lien. Moreover, the discrepancy in the dates of loss was expressly referenced in Utica's response to the Plaintiff's c. 93A "demand letter", and thus was made known to Plaintiff's counsel as a defense to the claims presently asserted in this litigation. (Ex. D, p. 2.)

Accordingly, Utica did not commit a violation of c. 93A by requesting accurate information concerning the Medicare lien, by noting the discrepancies

in the documentation provided with the asserted lien, and by withholding payment until the matter could be resolved. While Utica is aware of no Massachusetts precedent expressly on point, the Court in Wilson v. State Farm Mut. Auto. Ins. Co., 795 F.Supp.2d 604 (W.D.Ky. 2011), reached this conclusion in similar circumstances.

In Wilson, the Court noted that the plaintiff has the primary responsibility to repay Medicare, pursuant to 42 C.F.R. § 411.24(h). Id at 607. "However, [the insurer] is absolutely liable to Medicare should Plaintiff not satisfy the Medicare lien from his settlement funds." Id, citing 42 C.F.R. § 411.24(i)(1). "Moreover, [the insurer] may have an obligation to protect Medicare's lien under the Medicare Secondary Payer Act and its corresponding regulations." Id, citing 42 U.S.C. § 1395y(b)(2) and 42 C.F.R. § 411.24(i)(1). "For the insurer to consider these obligations seems responsible." Id. The Court concluded that "to comply with federal law and to protect its own legitimate interest against overpayment is reasonable and certainly not in bad faith." Id.

This conclusion is further supported when one considers the particular requirements under the relevant Federal statutes and accompanying regulations. In particular, two federal statutes and their related regulations could affect Utica's obligations in these circumstances: the Medicare Secondary Payer ("MSP") statute—42 U.S.C. § 1395y(b), and/or the Medical Care Recovery Act ("MCRA")—42 U.S.C. § 2651. The MSP is directed at recovering from "primary

plans", while MCRA is directed at recovering from tortfeasors. United States v. Baxter Int'l, Inc., 345 F.3d 866, 874 n. 3 (11th Cir. 2003).

Thus, the MCRA "provides that, where the Government is obligated to pay for the medical care of a person who is injured 'under circumstances creating tort liability upon some third person . . . to pay damages therefor,' the Government has the right to recover from the tortfeasor (or their insurers) the 'reasonable value' of the care it provides." Id, citing 42 U.S.C. § 2651(a) and United States v. Haynes, 445 F.2d 907, 908-909 (5th Cir. 1971). The right afforded the Government under MCRA is independent of the victim's rights and may be asserted by the Government on its own against the tortfeasor and his or her insurer. Haynes, 445 F.2d at 908-910.

The MSP affords the Government the right to recover payments it has made under Medicare against any entity which provides a "primary plan", defined to included a liability insurance policy. Baxter Int'l, 345 F.3d at 875-876, citing 42 U.S.C. § 1395y(b)(2)(A)-(B). Thus, the Government has a private right of action, with double damages available, if the primary plan fails to provide for re-payment to Medicare for relevant bills the Government has paid. Id at 876, citing 42 U.S.C. § 1395y(b)(3)(A). Thus, the Government may bring an action directly against a liability insurance company, which has made a payment related to medical bills which Medicare has paid, even though that insurer has already reimbursed the injured person or another party. Id at 876-877, citing 42 U.F.R. § 411.24.

"In carrying out its principal purpose of shifting the burden of paying for health care from Medicare to private insurers, the MSP creates as a practical matter a need for insurers to determine, before paying a disputed liability claim (involving among its alleged damages medical expenses likely to have been paid by Medicare), whether the Government has made a conditional payment, upon peril of being forced to pay the same claim twice." Id at 884-885. Moreover, payment is required "when notice or other information is received [by a liability insurer] that payment for such item or service has been or could be made [by Medicare]." Id at 885, quoting 42 U.S.C. § 1395y(b)(2)(A) and (b)(2)(B); see also at 890.

Thus, the Government's right to recover Medicare payments is "subject to recoupment in *all* situations where one of the statutorily enumerated sources of primary coverage could pay instead." Id at 888 (emphasis in original). Medicare regulations specifically contemplate recovery where there has been a third-party payment by a liability insurer as the result of a judgment or a litigation settlement. Id at 889.

On the other hand, the Government's right to recover is limited to the extent of its payment for medical services for which Utica and its insured are legally liable. Id at 899-900, citing 42 U.S.C. § 1395y(b)(2)(B)(iii). In addition, Utica's and its insured's obligations to Medicare are triggered based on constructive, not actual, knowledge of the Government's right to be repaid. Id at 900-901. A party has constructive knowledge when it "has in its possession

direct information that Medicare has made a conditional payment, or has in its possession information necessary to draw the conclusion that Medicare has made such a payment." Id and n. 29.

Thus, "[i]f a third party payor wants to avoid having to make two payments for the same service, it should refrain from paying someone whom it knows or should know that [the Government] already has paid." Id at 900, quoting Health Insurance Ass'n of America v. Shalala, 23 F.3d 412, 418 (D.C.Cir. 1994). In this regard, when a liability insurer is preparing to pay the plaintiff's claim, "Medicare's prior payment will normally be a matter of ascertainable fact." Id at 901. For this reason, the law "impos[es] the risk of loss on the alternative payer for failing to determine whether Medicare has already paid for the same service." Id at 901 n. 30. Thus, a liability insurer may be obligated to reimburse Medicare even if it has paid the plaintiff in full for her claim. Id at 903 n. 34, citing 42 C.F.R. § 411.24(i).

Similarly, under the MCRA (42 U.S.C. § 26519(a)), the Government has a right to recover the costs of medical care it paid when those costs were caused by the tortious conduct of another party. In re Dow Corning Corp., 250 B.R. 298, 325-326 (E.D. Mi. 2000). It necessarily follows that the defendant (and its insurer) cannot be liable under that statute for damages and medical costs it did not cause. Id at 326. The same is true under the MSP, where a liability insurer "will not become obligated to pay for a third party's injuries unless or until its insured is found liable for causing such injuries." Id at 340. Thus, under either the

MCRA or the MSP, Utica's obligation to repay the Government is limited to medical costs caused by its insured's tortious conduct, but is triggered when it has constructive knowledge of such costs.

As noted above, the present case involves an accident resulting in the plaintiff's alleged injuries, which occurred on May 1, 2007. Utica was provided information that Medicare had made payments for medical services rendered to or for Ms. Aiello after December 1, 2009 for a loss that occurred that day. However, there is no evidence that this subsequent "loss" was the result of, or caused by, the May 1, 2007 incident involving Utica's insured. Thus, there are legitimate reasons to believe that the Government has no right to recover for the medical costs incurred after December 1, 2009, since they do not relate to, and were not caused by, Ms. Aiello's May 1, 2007 fall.

On the other hand, Utica is aware from the lien documentation provided that Ms. Aiello may well have received Medicare assistance for treatments which were caused by her May 1, 2007 fall. At the very least, Utica knows that Ms. Aiello is Medicare eligible, has received Medicare benefits in the past, and thus may have received them relative to her claims against Utica's insured. Utica is therefore charged with ascertaining the extent of those medical costs for which it is required to honor Medicare's lien. If it does not do so, Utica faces the prospect of paying twice for the same damages.

Accordingly, Utica's insistence on obtaining accurate and complete records concerning Medicare's lien or potential lien not only was proper but also

was required under Federal law. Moreover, there is no evidence that Utica acted unfairly or deceptively. Wilson v. State Farm Mut. Auto. Ins. Co., 795 F.Supp.2d 604 (W.D.Ky. 2011). Thus, the plaintiff's c. 93A claim must fail as a matter of law.[2]

## CONCLUSION

For all of the above reasons, Utica respectfully requests that this Court grant its motion to dismiss.

The Defendant,
Utica Insurance Company,
By its Attorneys,

/s/William P. Rose

Richard E. Heifetz BBO #229000
heifetz@ths-law-com
William P. Rose BBO #557000
rose@ths-law.com
TUCKER, HEIFETZ & SALTZMAN, LLP
100 Franklin Street
Boston, MA 02110
617-557-9696
FAX 617-227-9191

Dated: January 25, 2012

[2] To the extent that the plaintiff claims that Utica should have issued its settlement check with "Medicare" as a payee sooner, such a claim is inconsistent with her own pleadings. In this regard, Ms. Aiello has alleged that such a check is "non-negotiable." (Ex. A, paras. 16, 19.) While this allegation is disputed, it clearly suggests that the plaintiff and her counsel did not want the check issued in this manner.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 25, 2012.

/s/William P. Rose